UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 20 CR 6 |
| | ) | |
| ROMEL MURPHY, | ) | The Honorable |
| | ) | C.J Williams, |
| Defendant. | ) | Judge Presiding. |

**DEFENDANT ROMEL MURPHY'S SENTENCING MEMORANDUM**

NOW COMES the defendant, ROMEL MURPHY, by and through his attorney, JEFFREY B. STEINBACK, and respectfully requests this Honorable Court, in light of *Gall v. United States,* 552 U.S. 38 (2007) and the factors set forth in 18 U.S.C. § 3553(a), sentence him to the most lenient sentence permissible under the law; one that is sufficient, but not greater than necessary to comply with the purposes of sentencing. In support, the following is offered:

**Introduction**

By the time Mr. Murphy comes before this Honorable Court for sentencing, it will have been two-and-a-half years since the conclusion of the scheme. He has spent much of this time reflecting on his misconduct, leading to his investigation, indictment, upcoming sentencing, his anxiety over an uncertain future for Romel and his loved ones . As a child, Romel Murphy was introduced to gambling by his father, a self-admitted compulsive gambler, who regularly brought Romel to card houses and the racetrack. Like his father, Romel developed a gambling addiction, which contributed to his conduct in this case, and also jeopardized his marriage and relationship with his two young children. Mr. Murphy understands in no uncertain terms that the actions that

1

have brought him before this Honorable Court were not only wrong, but inexcusable, having only himself to blame,

Mr. Murphy stands before this Honorable Court ashamed, remorseful, and afraid.. He has seen the direct impact of his illegal actions, not only on others, but on his own family. Nevertheless, Mr. Murphy has spent the time between first hearing of his investigation and the present by trying to repair the wrongs he has committed. He is doing everything he can to make amends to the victims, and recover any sort of goodwill and respect that he can. Romel Murphy has not only accepted full responsibility for his transgressions, but readily confessed his misconduct to law enforcement agents long before he was subsequently charged in this matter. Romel has taken responsibility for his addiction and admitted his gambling problem. He has worked very hard, engaging in one-on-one therapy and through self-introspection, through re-committing his life to his family and to doing good, to owning up to his n misdeeds and to working hard to rectify them, and has changed to become a better person. He is extraordinarily humbled, contrite, and deeply ashamed with himself. And yet, he is burdened with fear and uncertainty knowing that his actions have not only affected his life, but also the lives of those he loves and cares for most. Remarkably, through in the midst of this all, he has discovered a glimmer of hope.

There is no denying the seriousness of Mr. Murphy's behavior, and he does not intend on doing so – he was clearly wrong. Rather, he offers himself to the mercy of this Court, to take into consideration not only the actions that brought him before this Court, but to take into consideration the full value of a man's life; Romel's life, a life now guided by responsibility and hard work, but also guided by principles of generosity, benevolence, community involvement, charity work,

2

volunteerism, and the inherent desire to help people, when fashioning its reasonable sentence.

Taking together the nature and circumstances of the instant offense, his personal history and characteristics, and considerations of recidivism and specific deterrence, Mr. Murphy respectfully asks this Honorable Court to sentence him to the most lenient sentence permissible under the law; one that is sufficient, but not greater than necessary, to comply with the purposes of sentencing.

### Sentencing Considerations Pursuant to 18 U.S.C. §3553(a) Supporting a Below-Guidelines Sentence

This Court maintains unfettered discretion to fashion a sentence that punishes the offender, as opposed to just the crime. *Pepper v. United States,* 131 S.Ct. 1229, 1240 (2011). After first calculating the applicable sentencing range, district courts are tasked with imposing a sentence that is reasonable under 18 U.S.C. § 3553(a). However, because sentencing guidelines ranges are not to be presumed reasonable, this Court must consider whether they actually conform to the particular circumstances of the case. *Nelson v. United States,* 555 U.S. 350 (2009) (*per curiam*). "Under the post-*Booker* advisory system, the Federal Sentencing Act 'requires a sentencing court to consider Guidelines ranges, but it permits the court to tailor the sentence in light of other statutory concerns as well.'" *United States v. Archuleta,* 412 F.3d 1003, 1006 (8th Cir. 2005) (*quoting United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 757 (2005); and *United States v. McDonald,* 461 F.3d 948, 957 (8th Cir. 2006). Subsequent Supreme Court decisions have significantly broadened the range of sentencing choices dictated by the specific facts of the case. *See Gall v. United States,* 552 U.S. 38 (2007) (finding a sentence outside the Guidelines to be reasonable); *Kimbrough v. United States,* 552 U.S. 85 (2007) (noting that courts may vary from

3

Guideline ranges based solely on policy considerations, including disagreements with the Guidelines); *Rita v. United States,* 551 U.S. 338 (2007) (holding that a district court may consider arguments that the Guidelines sentence itself fails to properly reflect §3553(a) considerations); and *Cunningham v. California,* 549 U.S. 270 (2007) (stating that judges are no longer tied to the sentencing range indicated in the Guidelines but are obligated to take account of the range along with the sentencing goals enumerated in 18 U.S.C. § 3553(a)).

In fashioning his sentence that is sufficient but not greater than necessary, Mr. Murphy respectfully asks this Court to consider the nature and circumstances of the offense, his personal history and characteristics, his tarnished reputation, and the collateral consequences he faces as a result of his poor judgment that led to his criminal conduct.

a. **Advisory Guideline Range**

A sentencing court's inquiry begins by calculating the defendant's advisory Guideline range. According to the Plea Agreement, the parties agree to litigate the appropriate level increase for the amount loss under USSG § 2B1.1(b)(1). With the above-descriptions in mind, Mr. Murphy calculates his advisory Sentencing Guidelines as follows:

| | |
|---|---|
| Base Offense Level (§ 2B1.1) | 7 |
| Amount of Loss (§ 2B1.1(b)) | T/B/D |
| 10 of More Victims (§ 2B1.1(b)(2)(A)) | + 2 |
| Sophisticated Means (§ 2B1.1(b)(10)) | + 2 |
| Acceptance of Responsibility (§ 3E1.1(a)) | - 2 |

The Probation Officer has proposed that Mr. Murphy's total offense level is 24, which includes a 12-level increase for an amount of loss more than $250,000, but less than $550,000

(PSR ¶ 57) While the precise amount of the loss has yet to be determined, the 12 level increase is not affected. Conversations with the government reveal that precise loss figures will be available prior to sentencing. The lack of precision at this time in no way prejudices Mr. Murphy or the defense in our ability to prepare and proceed to sentencing. The Probation Officer also assessed a three-level increase for the Role in the Offense enhancement for a manager or supervisor. (PSR ¶ 61) However, the Probation Officer notes in the PSR, "The probation officer has not identified another participant in the instant offense and would not have applied the role increase absent the parties' agreement." (PSR ¶ 132) The defendant stipulated to this Role in the Offense enhancement in the Plea Agreement, because he, in fact, supervised the conduct of one individual whose actions assisted him in the commission of the scheme and believes his conduct in this scheme was otherwise extensive as that phrase has been applied to similarly situated defendants, thereby warranting the 3 level Role in the Offense enchancement.

The Probation Officer has assessed nine criminal history points, placing Mr. Murphy in Category IV. Coupling the Probation Officer's proposed offense level of 24 with a criminal history category of IV, Mr. Murphy's advisory sentencing range under the Probation Officer's proposal is 77 to 96 months' imprisonment.

However, not all sentences within the guideline range are reasonable. In *United States v. Wadena,* 470 F.3d 735, 738 (8th Cir. 2006), the Eighth Circuit held that there is no blanket rule prohibiting a downward variance resulting in probation when the Guidelines call for imprisonment. The Panel in *Wadena* emphasized that a rule prohibiting a downward variance resulting in probation when the Guidelines call for imprisonment "would amount to the judicial elimination of a sentencing option that would otherwise be available under federal criminal

5

statutes that do not impose mandatory imprisonment, … This judicial rule would effectively require imprisonment for defendants whose offense level falls within Zone B or above within the sentencing table of the Guidelines. That kind of categorical, mandatory approach to sentencing on the basis of judicially-found facts is precisely the type of sentencing regime the Supreme Court rejected in *Booker.*" *Wadena,* 470 F.3d at 738.

Mr. Murphy respectfully asks this Court to use its discretion, in accordance with the § 3553(a) factors and *Gall,* to depart from the advisory guideline range, and to sentence him to a period of probation, community or home confinement, monetary penalty, or a combination thereof.

    **b.   Nature and Circumstances of the Offense**

Mr. Murphy recognizes that wire fraud is a serious offense, and he fully accepts responsibility for his wrongdoing. The extent of the offense conduct has been accurately set forth in the PSR. We anticipate no further aggravating matters will be introduced.

Mr. Murphy has taken full responsibility for his transgression. Romel Murphy was indicted in this matter on January 8, 2020. (Dkt. No. 2) The PSR indicates that approximately 11 months prior to his indictment in this matter, Romel Murphy participated in an interview with law enforcement officials on February 26, 2019, and that Mr. Murphy promptly corroborated the information and confessed his criminal misconduct. (PSR ¶ 48)

At the time of preparing this sentencing memorandum, Romel Murphy had taken the necessary steps to make $50,000 in restitution prior to his sentencing. He has secured another $50,000.00 to be paid in October, and $25,000.00 available to be paid in December of 2021. These funds are from the personal account of Romel's wife, Trelinda. The PSR discusses how Romel's

6

gambling and this case almost ended their marriage. (PSR ¶¶ 48, 103) In *United States v. Anderson,* 533 F.3d 623, 633 (8th Cir. 2008), the Court of Appeals affirmed a downward variance based in part on "other ways in which the defendant had suffered atypical punishment such as the loss of his reputation and his company, the ongoing case against him from the Securities and Exchange Commission and the harm visited upon him as a result of the fact that his actions brought his wife and friend into the criminal justice system." *See also United States v. Garate,* 543 F.3d 1026, 1028-29 (8h Cir. 2008) (following *Anderson* for the proposition that a downward variance is not unreasonable if based upon the punishment suffered by a defendant from loss of reputation and adverse effect on defendant's marriage).

    c. **Personal History and Characteristics**

Romel Murphy is currently 43 years old. He was born to the non-marital union of Vernod Heard and the late Barbara (nee Murphy) Hemphill. Romel's parents separated when he was seven years old. The separation was precipitated by Romel's father gambling away a family owned gas station and convenient store, and his father throwing his mother on a bed during an argument about the loss. (PSR ¶ 98) Romel was raised by his mother and visited with his father. *Id.* Romel grew up in poverty, as the utilities were often turned off, but he knew his mother loved him. On weekends with his mother, the family went to church and participated in other family activities. During visits with his father, Romel spent days at a horse racetrack. (PSR ¶ 98)

Romel's father is 69 years old, a retired United States Air Force veteran, who resides in Paris, Tennessee. (PSR ¶ 99) His father was diagnosed with prostate cancer in 2019, and lung cancer in December 2020. (PSR ¶ 99) Romel's father, Vernod Heard, has written this Court pleading on his son's behalf and asking that his last years not be with Romel in prison.

Romel's mother, Barbara Murphy, passed away in 1997 at the age of 47 due to complications with colon cancer. (PSR ¶ 100) Prior to her death, Barbara was employed as a computer analyst with the government. (PSR ¶ 100)

On November 27, 2020, the Equality Should Be Normal Barbara Murphy Community Resource Center in Chicago, Illinois, was opened, in memory of Romel's mother. (PSR ¶ 121) This was a dream of Romel's, to be able give back and make a positive change in a community that desperately needs a place devoted to hope and to help. The center offers many services to the community and surrounding areas, including but not limited to, college and career preparation, mental health services, food, clothing, and hygiene essentials, a safe haven for youths, and local policy and candidate information for elections. (PSR ¶ 121)

Since June 2020, via the Equality Should Be Normal Resource Center, Romel Murphy has facilitated serving over 4,000 hot meals, distributed more than 2,000 essential goods, provided more than 700 meals to families, assisted with COVID-19 testing for more than 200 individuals, mentored 20 youth, and arbitrated four gang disputes. (PSR ¶ 121)

Numerous people who know Romel Murphy and are familiar with his work and contribution to the community, have written letters on behalf of Romel and are attached to this memo. More importantly, these individuals write on behalf of the Cook County State's Attorney Office, the Chicago Police Department, and the University of Chicago. This is unprecedented for the Cook County State's Attorney Office and the Chicago Police Department to write letters on behalf of a criminal defendant based upon their stellar contribution to the community, rather than the normal course of becoming a cooperating witness in furtherance of a criminal prosecution. While these individuals are from different areas of Romel Murphy's life, together they weave the

8

fabric of a man worthy of this Court's compassion.

Bernard Headley, Community Liaison with the Cook County State's Attorney Office, wrote, "I am writing to you today on behalf of one of our community partners, Mr. Romel Murphy. Its (sic) been just about 12 months since we met Romel and I must say … we are still as impressed with him now, as we were less than a year ago. His organization, Equality Should Be Normal, has been a true beacon of light within the Washington Park community. Through Romel's leadership he has been able to not only feed hundreds of people per week, but through several of his youth mentoring programs, he has been able to see students who may not have been given a chance, now go to college. What I am most impressed by Romel is acceptance of his background and use it to teach valuable lessons to young people that attend his mentoring sessions. . . . This young man has started a program that we hope in our Office continues to grow. If he is able to help keep young adults on the straight path to success through education, it will definitely have an impact on whether those young people ever see our Office. So we want to continue to support Romel in all his efforts.

Similarly, Yolanda Walton, a Community Policing Sergeant with the Chicago Police Department, wrote, "I have had the honor to know Romel Murphy since the opening of the Barbara Murphy Community Resource Center on 27 November 2020. Romel Murphy's dedication to building community relationships have shown an immediate impact on the residents utilizing the center. The Barbara Murphy Community Center, under the leadership of Romel Murphy, supports many marginalized communities by providing food, workforce development, and mentoring and enrichment programs. . . . Romel Murphy has organized volunteers to clean the community, feed the homeless, and supported families affected by the pandemic during

9

Case 1:20-cr-00006-CJW-MAR    Document 49    Filed 09/20/21    Page 9 of 17

COVID-19 by giving away holiday gift items for all ages on Christmas Day. He selflessly sacrificed celebrating the holiday with his family to put a smile on a little girl's face that lost her mother to gang violence. In addition, Romel has been an advocate to the community by strengthening community and policing relationships. He has assisted with local community organization initiatives, liaison with gang arbitration, and served as a critical role model in connecting youth to positive engagements. Romel Murphy has become a community pillar, and I look forward to continuing working with him to make a better Chicago."

Sharon Grant, Executive Director, Community Programs Accelerator with the University of Chicago, wrote to inform Romel that he had been accepted for admission to participate in the 2021 Certificate in Nonprofit Management program. In congratulating Romel, Ms. Grant indicated that "[t]he Certificate in Nonprofit Management is presented to nonprofit professionals who display outstanding leadership potential, a commitment to the Chicago South Side communities, and demonstrate a strong commitment to social justice."

For the past three-and-a-half years, Rev. Beryl-Denise Aguilera, LMFT, CCR, CCPM, Ph.D. D.B.H. (Student IILESE), has been Romel Murphy's therapist. Rev. Aguilera has written to inform this Court that Romel's "prognoses does in fact include serious problems in the past with a gambling addiction." Rev. Aguilera also indicates that "[m]any people can control gambling with medicines and/or therapy. All of the above was part of Romel's world. He has turned a significant corner in the last year, and five months – which I am therapeutically convinced means that he is in the change cycle of recovery and has completely moved away from the destructive patterns associated with this addiction. Romel does suffer with P.T.S.D. and early childhood family trauma, these patterns often persist until the individual starts to find true value in

10

themselves, and the person starts to create an environment of holistic behavior for themselves by becoming active in community, through faith, and actively re-engaging in an authentic renewal of family life. I can assure the court that Mr. Murphy is now doing all of these things, as he continues his work with me. Romel is very much aware that it is mandatory that he continues his work with me through the process of therapy. Therefore, I respectfully ask the court to grant Mr. Romel Murphy probation, as he continues to transform his life for his self, his family, and as a community asset."

Romel Murphy married Trelinda Clark-Murphy on October 25, 2014. (PSR ¶ 103) Trelinda is Vice President of Technology and Operations for Spencer Stuart, a global executive search and leadership consulting firm based in Chicago. Romel and Trelinda have a very supportive relationship, which has withstood his gambling addiction, which included gambling away $100,000 of family money in the instant offense. (PSR ¶ 103) Romel and Trelinda have two children, Clark Murphy, age six, and Rome Murphy, age three. (PSR ¶ 103) They reside in Chicago, Illinois.

Trelinda has written a letter to this Honorable Court on behalf of her husband. She describes how "Romel's most important role right now is being a father to our two kids," and how he is actively involved with the responsibilities of caring for and nurturing their children. This includes getting the children to and from school and extracurricular activities, helping with homework, teaching them how to swim, ride a bike and numerous other athletic activities, bath time, story time, and prayers with them nightly. Trelinda also describes how "Romel is remorseful for the mistakes of his past that were catapulted by his gambling addiction – which he has worked extremely hard to overcome through addiction programs, counseling and just living a

11

more purposeful life. It would be a significant loss for me, or kids (more importantly) and our community to not allow Romel to continue his life's work as a loving husband, father, and community leader."

This is the man who now stands before this Court awaiting sentencing.

### d. Recidivism, Deterrence, and Other Policy Considerations

This Court is inherently tasked with an incredibly difficult decision as to what a just punishment is for a given defendant. Irrespective of the amount of loss and Mr. Murphy's ultimate offense level, the resulting guideline range is extremely high in the sense that Romel Murphy is a 43-year-old man with a wife and two young children, who now poses absolutely no risk of re-offending in light of his conduct since his release in this case on February 6, 2020. (PSR ¶ 1) The Probation Officer has indicated that there have been no known violations of the court ordered conditions of release. (PSR ¶ 1) Moreover, the instant offense does not involve the use of violence or the possession of weapons. And while he makes no effort to deprecate the seriousness of the offense and understands the need for retribution, an appropriate sentence in this case should significantly vary from the advisory guidelines.

The goal of sentencing is to impose a sentence that is sufficient, but not greater than necessary to comply with the purposes set forth in § 3553(a)(2). Through this "parsimony provision," the Court is to impose a sentence that is the *minimum* necessary to accomplish those goals set forth in paragraph (2).

As to general deterrence, a message certainly needs to be sent to the community at large that fraud will not be tolerated and will be significantly punished. Here is how the certainty, rather than the severity of punishment, will deter the general public: under normal circumstances,

word will get out concerning Mr. Murphy's conviction, either through the media or word-of-mouth and the public will know that Mr. Murphy got caught and punished. In this particular case, the Cook County State's Attorney Office has indicated that Mr. Murphy is openly using his arrest and conviction in this matter as a teaching opportunity for the young people who attend his mentoring sessions at the community center that Romel began, in part, for at risk youth.

It is the certainty of punishment – the likelihood of getting caught, prosecuted, and punished, that will deter the general public, not the severity of prison time. Mr. Murphy's conduct in this case has already resulted in certain punishment, a federal felony conviction, which will affect him for the rest of his life. A sentence of probation constitutes a sentence which is sufficient, but not greater than necessary to comply with the various sentencing considerations.

In *Gall v. United States,* 552 U.S. 38, 43 (2007), the Supreme Court affirmed the district court's sentence of 36 months probation, despite an advisory guideline range of 30 to 37 months. The Supreme Court rejected the Eighth Circuit's conclusion that a sentence of probation was inadequate and beyond the realm of available sentencing choices and emphasized the fact that a sentence of probation is in fact punishment and is not merely "an act of leniency." *Gall,* 552 U.S. at 44.

In this particular case, any sentence of imprisonment within the advisory guideline range would go beyond what is necessary to accomplish the purposes of sentencing. Mr. Murphy has spent the past two-and-a-half years (since the time he promptly confessed his misconduct to law enforcement officials on February 26, 2019 (PSR ¶ 48)) reflecting upon the mistakes he made to land himself in this precarious position, and that let so many people down, particularly his wife and two young children, and his elderly father battling prostate and lung cancer. For these reasons,

13

Mr. Murphy requests a below-guidelines sentence that is sufficient but not greater than necessary to achieve the goals of sentencing.

The sentence Mr. Murphy is requesting of the Court is a serious one, befitting the offense of conviction. As the *Gall* Court observed, a felony conviction and a sentence of probation constitutes a serious punishment. While custodial sentences are qualitatively more severe than probationary sentences of equivalent terms, offenders sentenced to probation are nonetheless subject to conditions which restrict their liberty. *Gall,* 552 U.S. at 48 (*citing United States v. Knight,* 534 U.S. 112, 119 (2001) (inherent in the very nature of probation is that probationers do not enjoy the absolute liberty to which every citizen is entitled). For example, probationers may not leave the judicial district, move, or change jobs without notifying, and, in some instances, receiving permission from their probation officer or the court. *Id.* In addition, they must report regularly to their probation officers, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. Furthermore, most probationers are also subject to individual "special conditions" imposed by the court pursuant to U.S.S.G. § 5B1.3. *Gall,* 552 U.S. at 48-49. Finally, a probationer always faces the possibility of harsh consequences if a condition of his probationary term is violated.

If this Court decides to impose a period of home confinement as a condition of probation, Mr. Murphy will be confined to his home. He would not be allowed to leave his home to visit friends, attend a sporting event or concert, see a movie, eat in a restaurant, sit in the park, shop at a mall, or do any of the small acts that provide so much of the pleasure and enjoyment of life and which the rest of us take for granted. He will, for all practical purposes, be a prisoner in his home and not be able to leave except for work, or medical reasons, or other parameters established by

14

this Court. Such punishment provides a permanent reminder of Romel's wrong doing, and, for Romel, carries a high degree of guilt and shame.

Thus, given Mr. Murphy's prompt confession to law enforcement officials long before he was charged in this case, Mr. Murphy's extraordinary efforts to make restitution to the victims by using his wife's personal funds, his extensive and on-going therapy to address his gambling addiction, and his extensive community service, we respectfully request that he be sentenced to a term of probation. *See United States v. Warner,* 792 F.3d 847, 854 (7th Cir. 2015) (When sentencing the defendant to probation, the District Court found that Warner's good works "trumped" his misconduct and that "society will be best served by allowing him to continue his good works" outside of prison).

## CONCLUSION

This Court maintains significant discretion in the crafting of a reasonable sentence for Romel Murphy. Pursuant to the provisions of Title 18 Section 3553 (a)(2), the statute accords equal weoght to the nature and circumstances of the offense as it does to the history and charteristics of the offender. The foregoing considerations outlined in this submission show only a small portion of who Romel Murphy really is. Romel Murphy committed a fraud scheme. It was serious, defrauding several individuals out of significant sums of money. No one has been louder in condemning the seriousness of this offense than Romel himself. It is why he confessed to authorities long before he was charged and it is the reason he pled guilty to this offense thereafter. The conduct that placed him before this Court was not driven by any sort of greed, but desperation chasing one loss in a casino only to generate even greater losses This crime, his criminal conduct, however serious, does define Romel; nor does it fairly describe all of his history

15

or the entirety of his characteristics. Romel Murphy, at the time of this sentencing, is a devoted father, a husband, a man who has changed his life that he may be of help those in need, a man committed to righting the wrongs he is so ashamed to have committed. In sentencing Mr. Murphy to the most lenient sentence possible under the law, this Court would accomplish the goals of sentencing by punishing the individual – not the crime – to a sentence that is sufficient, but not greater than necessary. *See Pepper,* 131 S.Ct. at 1240.

                                                    Respectfully submitted,

                                                    /s/ Jeffrey B. Steinback
                                                    JEFFREY B. STEINBACK
                                                    Attorney for Romel Murphy

Jeffrey B. Steinback
8351 Snaresbrook Road
Roscoe, IL 61073
(847) 624-9600

## CERTIFICATE OF SERVICE

      The undersigned, Jeffrey B. Steinback, hereby certifies that in accordance with Fed.R.Crim.P. 49, and Fed.R.Civ.P. 5, DEFENDANT ROMEL MURPHY'S SENTENCING MEMORANDUM was served on September 20, 2021, pursuant to the district court's ECF filers to the following:

16

Kyndra Lundquist
Assistant United States Attorney
Northern District of Iowa
Cedar Rapids Division

/s/ Jeffrey B. Steinback
JEFFREY B. STEINBACK