IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 20-CR-0006-CJW |
| | ) | |
| vs. | ) | |
| | ) | |
| ROMEL MURPHY, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S RESISTANCE TO DEFENDANT' MOTION FOR DOWNWARD VARIANCE**

Defendant asks the Court to vary downward from the advisory guidelines range to a sentence of probation. (Docket 49). The United States resists.

## I. The Court Should Not Vary Downward

Based on the sentencing factors in section 3553(a), the Court should deny defendant's variance motion. A downward variance is not appropriate in this case for the following reasons.

*A. The Nature and Circumstances of the Offense are Aggravating*

First, regarding the nature and circumstances of defendant's offense, defendant committed a wide-ranging fraud against a number of victims across the country. Looking first at the fraud that defendant committed against R.E. and A.B., defendant defrauded them out of $60,000 for the first concert. (PSR ¶¶ 10-12). Despite this, defendant leveraged the fact that they had dealt primarily with a website owner to induce them into arranging another concert with him. At the time he did that, defendant knew that he had taken their money for the first show and

1

that he was the reason that they had a $30,000 non-refundable deposit down for a venue and no artists. Nevertheless, he continued to defraud them out of an additional $100,000 with a fraudulent contract and another $12,632 with representations about transportation for an artist he knew was not coming. (PSR ¶¶ 13-14). Defendant spent their money in a casino and created a fake wire transfer form to make it look like he had sent their money to the artist. (PSR ¶19).

Defendant's fraudulent acts towards other victims of his offense are no less aggravating. Defendant represented himself as another artist's manager to E.C. to induce him into contracting for that artist's performance. (PSR ¶ 25). E.C. found out that defendant was not the artist's manager only after defendant told him that the artist was not going to be able to perform and, even if she could, E.C. would have to pay more money. (PSR ¶ 27). Concerned about his business's reputation, E.C. took out two business loans and withdrew funds from his wife's retirement account, thereby causing them to incur a tax penalty. (PSR ¶ 28). Similar events unfolded with respect to another five concerts that victims attempted to arrange through defendant. (PSR ¶¶ 30-38, 41-43, 47). Defendant's actions caused a loss of at least $410,582 to his victims. (PSR ¶ 57).

Defendant's misrepresentations in the offense conduct are legion. He created fraudulent contracts himself or fraudulently signed other business's contracts as a representative for an artist in order to cause his victims to send him deposit money. As concerts dates approached, defendant would become hard to reach and victims generally found out that artists had not been booked as a result of their own

2

investigations or from the artist's actual representatives. After the concerts had not occurred and victims wanted their money refunded, defendant would send them false wire transfer forms to make it look like he had sent them money when he had not.

Defendant committed this fraud to support his gambling habit. He spent the money he received from victims gambling in casinos. Importantly, this is not a case where gambling losses or financial difficulties drove defendant to commit crimes. His desire to gamble caused him to commit the crimes. Despite having an income in 2018, a positive total net worth, and the ability to pay a fine, (PSR ¶¶ 122, 124, 129), defendant merely chose to use other people's money for his own entertainment. Notably, defendant did not commit this offense in a matter of days or only over the course of a few months. This went on for over a year. It was not a spur-of-the-moment offense. Defendant invested time and effort in creating false documents to defraud his victims out of funds that he could use to gamble. As this Court knows, the last sentence of USSG §5H1.4 reads: "[a]ddiction to gambling is not a reason for downward departure." In this case, the fact that defendant defrauded the victims to gamble their money away in casinos is not a reason for a downward variance.

The nature and circumstances of defendant's offense do not warrant a downward variance.

### B. *Defendant is a Federal Fraud Recidivist*

Defendant's history and characteristics do not support a downward variance. This is defendant's fourth federal fraud conviction. In 2003, he was convicted of three counts of bank fraud after he made fraudulent withdrawals from several accounts by convincing bank authorities that he was someone else. (PSR ¶ 75). That offense involved an intended loss of over $40,000. *Id.* Defendant received a seven-month sentence for that offense. *Id.* Defendant committed a state forgery offense on the day he was released to supervised release on the bank fraud offense. (PSR ¶¶ 75-76). Defendant then violated the terms of his supervised release and received a ninth-month revocation sentence in his bank fraud case. (PSR ¶ 75). Significantly, he had committed another federal crime while on that term of supervised release. (PSR ¶ 77).

On January 14, 2005, defendant received his second federal felony conviction when he was convicted of two counts of identity theft and one count of use of an unauthorized access device. *Id.* In committing that offense, he had stolen a victim's identity and then used the victim's identifiers to obtain an identification car. *Id.* He used the victim's identity on a lease agreement for an apartment and bought a $40,000 car in the victim's name. *Id.* He was arrested at a casino. *Id.* The loss in that case totaled $35,330. *Id.* Defendant received an eighteen-month sentence for that offense. *Id.* He was released to supervised release on June 19, 2006. *Id.* His supervised release was subsequently revoked, and he received a twelve-month revocation sentence. *Id.* He had, once again, committed a new federal crime while on a term of supervised release. (PSR ¶ 78).

4

On March 16, 2007, defendant received his third federal felony conviction when he was convicted of two counts of aggravated identity theft and one count of misuse of a social security number. (PSR ¶ 78). In that case, he had obtained a state license in a victim's name with his picture on it. *Id.* He then used that license to complete an application for a check cashing card. *Id.* He cashed two counterfeit checks totaling $2,526.61 that were payable to the victim. *Id.* Defendant received a thirty-month sentence for those offenses. *Id.*

This is defendant's fourth federal felony conviction, and it is also a fraud offense. However, it differs from the above offenses in that it is much more serious. Here, defendant caused a loss that is ten times greater than the highest of his three prior offenses. This offense has more victims and is much greater in scope than his previous crimes. Defendant's commission of this offense, his most serious, after three previous convictions is aggravating.

In his request for a downward variance, defendant identifies his history on pretrial release and restitution payments he states he will make as support. As to defendant's history on pretrial release, compliance with the conditions of pretrial release is the expectation and is not exceptional enough to warrant a downward variance, especially not the substantial variance that defendant is requesting here. Similarly, defendants are expected to repay restitution and should not be able to buy their way out of prison sentences. Otherwise, an unconstitutional system would be created that awarded those with financial means with lenient sentences. *See United States v. Engle*, 592 F.3d 495, 504-05 (4th Cir. 2010) (finding that court's variance to probation solely so defendant could earn substantial income to pay restitution was

5

impermissible); *United States v. Mueffelman*, 470 F.3d 33, 40 (1st Cir. 2006) ("Restitution is desirable but so is the deterrence of white-collar crime (of central concern to Congress), the minimization of discrepancies between white-and blue collar offenses, and limits on the ability of those with money or earning potential to buy their way out of jail."). Here, payments of restitution that defendant has not yet made are not exceptional and do not take his case outside the heartland of the guidelines.

   *C. Deterrence Weighs in Favor of a Sentence within the Guidelines Range*

  Deterrence, specific and general, is an important factor in this case. Defendant argues that the "certainty of punishment," even without imprisonment, is sufficient deterrence. (Docket 49 at 13). He notes that his conduct has resulted in the punishment of a federal felony conviction. *Id.* However, defendant was already a felon three times over at the time he committed this offense. The fact of those convictions did not deter him and there is no reason to suggest that, standing alone, the fact of this conviction would either. Defendant is a recidivist who has remained undeterred from committing crimes despite prior short prison sentences. Defendant needs to understand that he cannot commit serious criminal offenses without serious consequences. The significant losses defendant caused in this case warrant a substantial sentence. Furthermore, the public needs to see that defrauding victims out of their money and causing them significant losses will be punished. Specific and general deterrence support a sentence within the guidelines range.

*D. Restitution*

Paragraph 155 of the PSR does not specify the restitution owed to four individuals: A.B., R.E., R.N., and C.M. At this time, the government believes that restitution to these individuals is owed as follows: (1) A.B.—$130,000; (2) R.E.—$54,223.53[1]; (3) R.N.—$20,000; and (4) C.M.—$0.

## II. Conclusion

Based on the serious nature of defendant's offense and the other factors in 18 U.S.C. § 3553(a), the Count should deny defendant's motion for a downward variance and impose a sentence within the guidelines range.

Respectfully submitted,

SEAN R. BERRY
Acting United States Attorney

By: */s/ Kyndra Lundquist*

KYNDRA LUNDQUIST
Assistant United States Attorney
111 7th Avenue SE, Box 1
Cedar Rapids, IA 52401-2101
319-363-6333

CERTIFICATE OF SERVICE
I hereby certify that on September 21, 2021, I electronically filed the foregoing with the Clerk of Court using the ECF system which will send notification of such filing to the parties or attorneys of record.
UNITED STATES ATTORNEY
BY: /s KAL_____

---

[1] This consists of $40,000 contributed toward the deposits on the concerts and $14,223.53 in non-refundable costs for sound for the concert.